IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | |
| Gloria Alanis, ) | Case No. 12 B 07465 |
| ) | |
| Debtor. ) | |
| _____) | |

**Memorandum of Judgment**

This Chapter 7 bankruptcy case is before the court on the objection of Ford Motor Credit Company ("Ford") to an exemption that the debtor claims in two bank accounts. Ford contends that the exemption is invalid because the accounts were never part of the bankruptcy estate. The dispositive issue arises under the procedure for enforcing an Illinois citation to discover assets; specifically, the issue is whether a state court order directing transfer of funds in the debtor's bank accounts resulted in the immediate loss of the debtor's interest in the funds, before the funds were actually transferred by the bank. As discussed below, a citation order does not have that effect, and so the funds at issue here became property of the debtor's estate, subject to exemption by the debtor. Accordingly, Ford's objection will be overruled.

**Jurisdiction**

Under 28 U.S.C. § 1334(a) (2006), the federal district courts have "original and exclusive jurisdiction" of all cases under Title 11 of the United States Code (the "Bankruptcy Code"), but 28 U.S.C. § 157(a) allows the district courts to refer these cases to the bankruptcy judges for their districts. The District Court for the Northern District of Illinois has made such a reference of all of its bankruptcy cases. N.D. Ill. Internal Operating Procedure 15(a).

Under 28 U.S.C. § 157(b)(1), a bankruptcy judge to whom a case has been referred may enter final judgment on any "core proceedings" arising under the Bankruptcy Code or

arising in a case under the Bankruptcy Code. Core proceedings include matters concerning "allowance or disallowance of . . . exemptions from property of the estate." 28 U.S.C. § 157(b)(2)(B). Accordingly, the bankruptcy court has jurisdiction to enter a final judgment on Ford's objection to the debtor's exemption claim.

## Background

The parties do not dispute any of the relevant facts. On November 15, 2011, Ford obtained a judgment in the Circuit Court of Cook County, Illinois against Gloria Alanis in the amount of $8,861.85 plus statutory interest and costs. Ford issued a citation to discover Alanis's assets to JP Morgan Chase Bank ("Chase") in accordance with the Illinois statute governing supplementary proceedings to enforce judgments. Chase answered the citation, informing Ford that it held $825.08 and $48.82 in two separate accounts for Alanis's benefit. The Illinois state court entered an order on February 27, 2012 directing Chase to turn over $873.50 to Ford.

The next day, Alanis filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On Schedule B, she listed a $400 checking account and an $800 savings account at Chase as assets of the estate. On Schedule C, she claimed the $400 and $800 amounts in the accounts as exempt under the Illinois wildcard exemption, 735 Ill. Comp. Stat. 5/12-1001(b) (2010). Ford did not serve Chase with the state court order before the bankruptcy case was filed, and Chase still holds the funds in the accounts.

Ford asserts that the state court order nevertheless had the effect of transferring ownership of the funds from Alanis to Ford. Ford argues that Alanis has therefore claimed an exemption in property that is not property of the estate, so that the exemption must be denied.

## Conclusions of Law

Section 2-1402 of the Illinois Code of Civil Procedure sets forth procedures that a

2

judgment creditor may follow in seeking satisfaction of a judgment. A creditor may commence these procedures by serving a citation to discover assets on either the judgment debtor or a third party holding property of the judgment debtor. 735 Ill. Comp. Stat. 5/2-1402(a) (2010). When a judgment creditor serves a citation to discover assets on a third party, a notice of that citation must also be sent to the judgment debtor. *Id.* at 5/2-1402(b). The citation notice must include a date on which the citation will be heard and must let the judgment debtor know that he or she has the right to assert statutory exemptions in certain income or assets. *Id.* Section 5/2-1402(*l*) sets forth the procedure by which a judgment debtor may assert an exemption in property. The judgment becomes a lien on nonexempt property upon the service of a citation. *Id.* at 5/2-1402(m). When nonexempt assets have been discovered, the court may enter an order compelling a third party in possession of assets of the judgment debtor to turn the property over to the judgment creditor. *Id.* at 5/2-1402(c)(3).

The statute, however, does not address the effect that the entry of a turnover order has on the ownership of the property, and there appears to be no state or federal court decision addressing this question. Ford cites *In re Weatherspoon*, 101 B.R. 533 (Bankr. N.D. Ill. 1989), as holding that a judgment debtor no longer has an interest in property covered by a turnover order. The decision does not so hold. The judgment creditor in *Weatherspoon* served a citation to discover assets on the judgment debtor's bank but did not obtain a turnover order until after the judgment debtor filed a bankruptcy case. The bankruptcy court simply held that under these circumstances, the debtor still had a property interest in accounts at the bank at the time of the bankruptcy filing. The court noted that a debtor's interest in property that is the subject of a citation to discover assets could be terminated by an order of the state court, and it went on to say that the debtor would continue to have an interest in the property "[a]t least until that [turnover] order is entered." *Id.* at 538. The court, however, had no reason to consider—and made no statement about—the effect of a turnover order that has

3

been entered but not yet served on a third party holding property of the judgment debtor.

More pertinent is the decision of the Supreme Court in *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983). That decision dealt with a statutory tax lien that the Internal Revenue Service had obtained on all of the property of Whiting Pools. *Id.* at 200. The IRS seized some of this property in accordance with the applicable provisions of the Internal Revenue Code, and Whiting Pools commenced a Chapter 11 case the next day, seeking an order requiring the IRS to turn the seized property over to the bankruptcy estate pursuant to 11 U.S.C. § 542(a). *Id.* at 200-01.

The Supreme Court found that turnover was appropriate because the property seized by the IRS was property of the estate, even though the debtor did not have a possessory interest in the property at the time the petition was filed. *Id.* at 205. The Court read the definition of estate property in § 541(a)(1) of the Bankruptcy Code broadly and held that the relevant seizure provisions of the Internal Revenue Code did not "transfer ownership of the property to the IRS." *Id.* at 209-10. The Court noted that the remedies in the tax law were "analogous to remedies available to private secured creditors" and "do not determine the [IRS]'s rights to the seized property, but merely bring the property into the [IRS]'s legal custody." *Id.* at 211.

Here, similarly, the state court order directed the bank holding Alanis's funds to transfer them to Ford, but at least until that order was served on the bank, Alanis still held a right to the funds, subject to Ford's lien. If Alanis had paid the judgment before the order was served, the funds would have retained their status as her property, no longer subject to Ford's lien.

The Supreme Court's decision in *Barnhill v. Johnson*, 503 U.S. 393 (1992), gives further support to this conclusion. *Barnhill* dealt with the question of when a debtor's interest in a checking account is transferred for the purposes of a preferential transfer under 11 U.S.C.

4

§ 547. After discussing the holdings of varying bankruptcy and circuit court decisions, the Court decided that the transfer occurs when the payee bank honors the check:

> [N]o transfer of any part of the debtor's claim against the bank occurred until the bank honored the check . . . [at which time,] the bank had the right to "charge" the debtor's account . . . and [the creditor] no longer had a claim against the debtor. Honoring the check, in short, left the debtor in the position that it would have occupied if it had withdrawn cash from its account and handed it over to [the creditor]. We thus believe that when the debtor has directed the drawee bank to honor the check *and* the bank has done so, the debtor has implemented a "mode, direct or *indirect* . . . of disposing . . . of property or . . . an interest in property." 11 U.S.C. § 101(54) (1988 ed., Supp. II) (emphasis added). For the purposes of payment by ordinary check, therefore, a "transfer" as defined by § 101(54) occurs on the date of honor, and not before.

*Id.* at 399-400.

Like a check, the state court turnover order directed payment of the funds in Alanis's bank accounts to Ford, but until that order was served on the bank and the bank complied with the order, thus "charging" the accounts, the funds in the accounts continued to belong to Alanis and became property of her bankruptcy estate upon the filing of her bankruptcy case.

## Conclusion

Because the funds in Alanis's accounts at Chase were property of her bankruptcy estate, she was entitled to claim an exemption in that property. 11 U.S.C. § 522(b); 735 Ill. Comp. Stat. 5 5/12-1001(b) (2010). Ford's objection to the claimed exemption will therefore be overruled.

Dated: May 2, 2012

Eugene R. Wedoff
United States Bankruptcy Judge

5